HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEON BLATT,

            Plaintiff,

      v.

PETE SHOVE, et al.,

            Defendants.

CASE NO. C11-1711RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment. No party requested oral argument, and the court finds oral argument unnecessary.  For the reasons stated herein, the court GRANTS the motion in part and DENIES it in part.  Dkt. # 125.  The court dismisses all claims against all Defendants with two exceptions: Plaintiff may proceed to trial on his claim that six Marysville Police officers arrested him without probable cause in violation of the Fourth Amendment and his claim that the officers arrested him in retaliation for exercising his First Amendment rights.

The court DENIES Plaintiff's motion to extend the discovery period.  Dkt. # 132. Discovery in this matter is closed.  Trial will begin on December 8, 2014.

The clerk shall TERMINATE Defendants Adam Vermeulen, John Doe Gehlsen, and Fred L. Gillings as parties.  There are no claims remaining against them.

ORDER – 1

## II.  BACKGROUND & ANALYSIS

### A.  The Court Grants Summary Judgment Against All of Mr. Blatt's Remaining Claims, with Two Exceptions.

In its February 7, 2014 order, the court held that that the only claims that remain in this action are Plaintiff Leon Blatt's claims invoking 42 U.S.C. § 1983 and § 1985 against seven Marysville police officers and one Marysville judge.[1]  Section 1983 permits a suit against a defendant acting under color of state law who has violated a plaintiff's rights guaranteed by the United States Constitution or other federal laws.  Section 1985 creates liability for certain conspiracies between state actors.

In their summary judgment motion, Defendants have attempted to decipher Mr. Blatt's operative complaint to determine what § 1983 and § 1985 claims Mr. Blatt has attempted to state.  As the court has noted before, that complaint is a confounding jumble of hard-to-follow and error-strewn allegations, along with a host of irrelevant material.  Feb. 7, 2014 ord. (Dkt. # 119) at 4-5; Mar. 1, 2013 ord. (Dkt. # 82) at 1-2.  The court concludes that Defendants did as well as could be expected in identifying those claims, and said enough about them in their summary judgment motion to obligate Mr. Blatt to either support those claims or clarify which claims he intended to bring.

With two exceptions, which the court will soon discuss, Mr. Blatt's § 1983 and § 1985 claims fail because of fatal legal flaws as well as the lack of any evidence to support them.  Mr. Blatt neither states a claim nor provides evidence to support a claim that anyone deprived him of rights guaranteed by the Equal Protection Clause or Due Process Clause of the Fourteenth Amendment.  He has no standing to assert a claim based on any police officer's or other official's failure to investigate an alleged violation of a domestic violence no-contact order involving Mr. Blatt's landlord and a woman.  Mr. Blatt's assertion that anyone conspired to prevent him from testifying in a court

---

[1] Defendants correctly note that the February 7 order erroneously stated that claims against "two judges" survived.  The court did not notice that Mr. Blatt's second amended complaint, unlike his original complaint, did not purport to state a claim against "pro tem Gehlsen."  Mr. Blatt has confirmed that he deliberately chose not to sue pro tem Gehlsen in his second amended complaint.  Blatt Decl. (Dkt. # 128-1) ¶ 50 n.1.

ORDER – 2

proceeding related to any allegation of domestic violence lacks evidentiary support.  As to his attempt to state a claim against the judge, he has offered neither evidence nor allegation sufficient to overcome the absolute immunity afforded to judges for their judicial acts.[2]

The court dismisses each of the foregoing claims with prejudice, and to the extent that Mr. Blatt believes that he has one or more other claims hidden in his operative complaint that the court has not addressed in this order or in its prior orders, the court rules that he has abandoned those claims by failing to state them with sufficient clarity or to take any other actions that would put anyone on notice that he is pursuing those claims.

**B.    Mr. Blatt's False Arrest and Retaliatory Arrest Claims May Proceed to Trial.**

What remains of this case are two related claims that arise from an incident in Marysville at around 1:00 a.m. on October 13, 2008.  The court considers those claims on a motion for summary judgment, and therefore applies the familiar summary judgment standard, which requires it to draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

---

[2] The court's disposition today makes it unnecessary to address Mr. Blatt's "surresponse," which he filed without notice in violation of Local Rules W.D. Wash. LCR 7(g).  In that document, he challenge[s]" the court to point out where he "ever alleged" that the actions of the judge and others caused him to be "continuously confined for the two months" following his arrest.  The "continuously confined" assertion appears on page 12 of the court's February 7, 2014 order, where the court pointed out that the allegations of Mr. Blatt's operative complaint were inconsistent.  As an example, the court noted that he both contended that he was "continuously confined" for the two months following his arrest and that he was released after just eleven days.  Because Mr. Blatt asserts that this comment was an instance in which the court "insulted" him, the court recounts some of the allegations supporting it.  In Mr. Blatt's second amended complaint, he asserts that "[f]or an aggregate of 60 days [he] had no law library access, no case file, no way to know the statute or ordinance or court rules," and so he "filed a writ of habeas corpus."  ¶ 7.90.  Because Mr. Blatt's complaint contains two paragraphs numbered 7.90, the court clarifies that it refers to the one on page 20 of his 74-page complaint, not the one on page 26.  Mr. Blatt also asserted, in the same complaint, that he was "abducted and held for weeks and months at a time," ¶ 8.4, that he was allowed to "languish in administrative detention for months without counsel," ¶ 9.116 (p.70, not p.55), and that the judge "jail[ed] him for 75 days," ¶ 9.98 (p.67, not p.52).  Mr. Blatt initiated this case with a complaint that twice asserted that the judge "held [him] in jail for two months before discharging [him]."  Dkt. # 4 at 2, 4.

ORDER – 3

Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

According to Mr. Blatt, a woman came to him on that October night to complain that Mr. Blatt's landlord was "holding her in violation of a No Contact Order and was beating her."  Blatt Decl. (Dkt. # 128-1) ¶ 8.  Mr. Blatt advised the woman to run away from his landlord, but she declined.  Later that night, Mr. Blatt's landlord, apparently upset that the woman had come to Mr. Blatt, confronted him with a knife, cut his fingertip, chased him down a road, and tackled him.  Mr. Blatt escaped and ran to a house and knocked on the door.  *Id.* ¶ 12.  A girl answered the door, and Mr. Blatt asked her to call 911.  The girl went inside, came back to the door at least once, and her mother eventually told her to close the door.  Mr. Blatt remained on the front porch of the house.  While he waited, he answered one or more cellular phone calls from the woman who had spoken to him earlier about his landlord.  *Id.* ¶ 15.

Eventually, the Marysville Police arrived.  The parties' accounts of subsequent events differ sharply.  To begin, Mr. Blatt insists that *six* police officers arrived and later surrounded him, Blatt Decl. ¶¶ 17, 19, whereas Defendants contend that only three officers were at the scene, and at most two of them interacted with Mr. Blatt.  Mr. Blatt does not name any of the officers at the scene, with the exception of Officer Pete Shove.  The court can be certain that Officer Shove was at the scene, because he filed a police report revealing as much.  Officer Shove's report (which is the only evidence from Officer Shove) makes no mention of any other officer at the scene.  But the court can be

ORDER – 4

certain that Officer Adam Vermeulen was at the scene, because he provided a declaration stating that he arrived at the scene and discovered that Officer Shove had already arrested Mr. Blatt and the "scene was under control."  Vermeulen Decl. (Dkt. # 126) ¶ 5. Sergeant Jeffrey Franzen was apparently at the scene as well, because Officer Vermeulen obliquely acknowledges his presence.  *Id.* ¶ 6.  Officer Vermeulen declares that he did not leave his patrol vehicle, and that he had no contact at all with Mr. Blatt.  *Id.*  Mr. Blatt offers no evidence to dispute Officer Vermeulen's account, and the court therefore accepts it as true.

Which other officers were at the scene that night?  The court knows that just eight Marysville police officers were on duty, because Marysville provided that information to Mr. Blatt in response to a public records request, and he has not challenged the accuracy of that response.  Mr. Blatt sued seven of those officers, but with the exception of Mr. Shove, he provides no evidence at all that is specific to any one of them.  Because Officer Vermeulen never left his car, the court must take the inference that the six officers who "surrounded" Mr. Blatt (Blatt Decl. ¶ 19) were the six other officers he sued: Officer Shove, Sergeant Franzen, and Officers Craig Dockstader, Jeremy King, Brian Lutschg, and Todd Fast.  Defendants contend that the latter four officers were not at the scene. Defendants' evidence in support of that assertion is weak at best, but the court could not credit it even if it were stronger.  On summary judgment, the court is compelled to accept Mr. Blatt's declaration that he was surrounded by six officers, and must infer that they were the six officers (other than Officer Vermeulen) whom he sued.

Defendants attempt to rely on two computer-aided dispatch reports as evidence. According to Defendants' counsel, the CAD reports reflect 911 calls from the owner of the home whose door Mr. Blatt knocked on that night as well as a neighbor who heard Mr. Blatt.  The CAD reports contain notations relaying some of the substance of each caller's report, and they contain notations suggesting that Officer Shove, Sergeant Franzen, and Officer Vermeulen responded to the call.  According to Defendants, the

ORDER – 5

reports are admissible evidence both of what the officers knew about the situation before they arrived and evidence that Officers Dockstader, King, Lutschg, and Fast were not involved.  But Defendants are mistaken, because they have submitted no evidence that establishes either that the CAD reports reflect what the officers knew when they arrived at the scene or that the absence of four officers' names from the CAD reports means that they were not at the scene.[3]  There is no evidence in the record that comes directly from any officer other than Officer Shove and Officer Vermeulen.

The only evidence that sheds light on what the officers knew when they arrived at the scene is Officer Shove's report.  There, he asserts that he was dispatched to "a report of a male on the porch of [a Marysville residence] screaming for help, pounding on the door, and yelling that he was a police officer and demanding the residents open the door for him."  Culumber Decl. (Dkt. # 127), Ex. 3.  He also asserts that "our agency" received two calls, one from the homeowner and another from the neighbor.  *Id.*  He explained that the callers had described the person as a white male in his forties with light colored hair wearing a dark colored coat and jeans.  *Id.*  Both callers asserted that the person was "screaming that someone was chasing him," although they could not see anyone else.  *Id.*  He asserts that the homeowner stated that the man was yelling "Police, open up!"  *Id.*  Mr. Blatt offers no evidence to dispute Officer Shove's account of what he knew when he arrived at the scene.  He contends that he was not screaming and that he did not claim to be a police officer when he knocked (not pounded or banged) on the door.  Blatt Decl. (Dkt. # 128-1) ¶¶ 24-30.  He admits, however, that he may have made statements when talking on his cellular phone while on the front porch that could have been interpreted as statements about the police.  *Id.* ¶ 15.  In any event, Mr. Blatt has no evidence as to what

---

[3] Mr. Blatt used much of his opposition to the summary judgment motion to demand that the court strike the CAD reports.  He correctly noted that Defendants laid no foundation to admit the CAD reports as business records.  The court does not rely on the CAD reports in its decision today, although it notes that its decision would be no different even if it had relied on them.  In light of the court's disposition, it need not resolve Mr. Blatt's evidentiary objections to the CAD reports or to any other piece of evidence.

ORDER – 6

the callers said when the called 911 or what information 911 relayed to Officer Shove. The court accordingly accepts as true Officer Shove's account of what he knew when he arrived at the scene.

Mr. Blatt claims that when the six officers arrived at the scene, he left the porch to walk to the street to meet them. Blatt Decl. (Dkt. # 128-1) ¶ 17. One officer, who Mr. Blatt does not identify, interrupted Mr. Blatt as he began to explain himself, and stated as follows:

> Hey, I recognize you. You're that constitutionalist. Nu-uh. We're not going to take your report. If you don't have to follow the rules, we don't have to follow the rules.

*Id.* ¶ 18. After that, the officers surrounded him. He explained that the woman was "being held" by his landlord just a few blocks away. *Id.* ¶ 20. He told the officers his landlord's name and address. *Id.* ¶ 33. The officers stated that they had arrested the landlord many times, "mostly for violence against women." *Id.* ¶ 20. During the conversation, Mr. Blatt's cellular phone rang repeatedly. *Id.* ¶ 23. An unidentified officer asked him why he had not used his cellular phone to call 911, as opposed to asking the homeowner to do it. *Id.* Mr. Blatt responded: "Have you ever tried calling 911 while running down a dark gravel road with a knife-wielding man chasing you?" *Id.* An unidentified officer told Mr. Blatt to "turn around and repeat the story to my sergeant." *Id.* ¶ 21. When Mr. Blatt did so, an officer "grabbed [his] hands from behind and cuffed them." *Id.*

No one disputes that Mr. Blatt's initial arrest was for disorderly conduct, a misdemeanor Washington offense. RCW 9A.84.030. In this § 1983 action, that arrest was unlawful only it violated the Fourth Amendment.[4] A § 1983 unlawful arrest claim requires the plaintiff to prove a lack of probable cause. *Norse v. City of Santa Cruz*, 629

---

[4] To the extent that Mr. Blatt argues that the arrest was unlawful because it did not comply with state law prohibiting arrest for certain misdemeanors, that argument is irrelevant to his § 1983 claim, which requires him to demonstrate a violation of the Fourth Amendment. *See Virginia v. Moore*, 553 U.S. 164, 171 (2008) (holding that warrantless arrest in violation of state law did not violate Fourth Amendment).

ORDER – 7

F.3d 966, 978 (9th Cir. 2010); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). Probable cause is a determination that "the facts and circumstances within [the arresting officer's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011).

Accepting Mr. Blatt's account as true, which the court is required to do, the officers had no probable cause to arrest him for any crime. Although the facts known to the officers when they arrived were perhaps suspicious, Mr. Blatt explained that he had come to the front porch because he was fleeing his landlord, who had a knife. He told the officers where to find his landlord. There is no evidence that the officers attempted to contact either the homeowner or the neighbor who had called 911 to report Mr. Blatt's behavior. Accepting Mr. Blatt's version of events, police had no reason to believe he had committed a crime.

Officer Shove offers an account of events that, if a jury accepts it as true, may establish probable cause to arrest. According to Officer Shove's report, he approached the "male subject," who "matched the description given by the callers," and "asked him what was going on." Culumber Decl. (Dkt. # 126), Ex. 3. Mr. Blatt stated that he was being chased by someone named "Tom," that "Tom" was trying to kill him, and that "they were in some type of dispute related to a barbershop that 'Tom' owned in Lake Stevens." *Id.* But when Officer Shove asked Mr. Blatt where "Tom" was, Mr. Blatt only stated that he did not know. *Id.* Mr. Blatt gave "rambling" answers to Officer Shove's questions that "at times did not make sense." *Id.* For those reasons, Officer Shove asserts, he arrested Mr. Blatt for disorderly conduct. The court need not decide whether these facts that Officer Shove asserts would establish probable cause, because the court cannot accept those facts on summary judgment where Mr. Blatt has offered directly contradictory evidence. A jury must decide Mr. Blatt's claim that the officers arrested him in violation of the Fourth Amendment.

ORDER – 8

A jury must also decide Mr. Blatt's closely-related claim that the officers arrested him in retaliation for his exercise of his First Amendment rights.  He can prevail on that claim only if he prevails in proving that the police lacked probable cause, because neither the Ninth Circuit nor the Supreme Court has recognized a "First Amendment right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 825 (9th Cir. 2013).  Assuming he proves a lack of probable cause, he can prove his § 1983 retaliatory arrest claim by proving that the officers' "desire to chill his speech" or other exercise of his First Amendment rights "was a but-for cause" of their unlawful arrest. *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013).

Mr. Blatt's evidence permits the inference that the officers arrested him not because they suspected him of committing a crime, but because he had previously expressed "constitutionalist" views.  Mr. Blatt believes that the officers ascribed those views to him as a result of an incident during the prior summer in which police, responding to his landlord's complaint of embezzlement from a barbershop that he owned, attempted to obtain identification from people at the barbershop, including Mr. Blatt.  Blatt Decl. (Dkt. # 128-1) ¶¶ 3-7.  Mr. Blatt refused to provide identification, and advised the other people in the barbershop to do the same. *Id.* ¶¶ 4-6.  As the officers (who Mr. Blatt does not identify) left the barbershop, one of them said:  "What are you, some kind of constitutionalist?" *Id.* ¶ 7.  Mr. Blatt offers no evidence, other than the use of the word "constitutionalist," to connect the events in the barbershop to his arrest in October 2008.[5]  Regardless of what (if anything) the officers knew about the "barbershop incident," Mr. Blatt's evidence that the officers identified him as a "constitutionalist" at the outset of their encounter on October 13 is sufficient to permit the inference that his "constitutionalist" views motivated the conduct of the police on October 13.  If he can

---

[5] Defendants' counsel decries Mr. Blatt's "continuous[] reference[s]" to the "barber shop incident," and insists that "Defendants have no idea what he is talking about." Defs.' Reply (Dkt. # 130) at 4 n.3.  Counsel submitted no evidence from his clients to support that assertion.

ORDER – 9

prove that at trial, he will establish a violation of the First Amendment. The court has no idea what a "constitutionalist" is, but if officers used the term to refer to Mr. Blatt that night, a jury could reasonably infer that the term is a shorthand for beliefs Mr. Blatt had asserted about his constitutional rights.

This case will proceed to trial solely on Mr. Blatt's § 1983 claims against the police officers asserting violations of his Fourth and First Amendment rights, and solely to the extent that those claims are based on his arrest on October 13. The court dismisses all claims against Officer Vermeulen, because Mr. Blatt has not contradicted evidence that Mr. Vermeulen had no role in his arrest. Claims against the six remaining officers will proceed to trial.

## C.    The Court Will Not Extend Discovery.

As the foregoing discussion suggests, the evidence the parties submitted in connection with this motion leaves much to be desired. Defendants, however, may have access to the evidence necessary to remedy those shortcomings. For example, they may be able to substantiate their assertion that the CAD reports establish that four of the officers Mr. Blatt has sued did not come to the scene. They may choose to provide, for the first time, evidence from the officers themselves as to whether they were present.

Mr. Blatt, on the other hand, is likely to have more difficulty presenting evidence other than his own testimony. He has apparently conducted no discovery. With discovery set to close on August 11, he telephoned counsel for Defendants on August 5 and asked to depose all of the police officers on August 11. Defense counsel responded that he was unavailable that day. Mr. Blatt asked instead to depose all of the officers the following day. Defense counsel declined. There is no evidence that Mr. Blatt provided the notices of deposition that Federal Rule of Civil Procedure 32(b) requires.

Mr. Blatt's opposition to the summary judgment motion contained a request, invoking Federal Rule of Civil Procedure 56(d), to delay a ruling while he sought to depose the officers and to obtain more information about the "dispatch of police to his

ORDER – 10

911 call." But despite having more than two months following his opposition to complete that discovery, he has not done so. In light of the court's ruling on the summary judgment motion, Mr. Blatt's Rule 56(d) request is moot.

Late on August 7, Mr. Blatt filed a motion to extend the discovery cutoff. He does not request a new discovery deadline, but it appears he wishes to follow through on his recently-announced plan to depose the police officers.

Mr. Blatt's motion is untimely. The court's scheduling order set an August 11 discover deadline, along with a requirement that any "motion related to discovery" be filed so that it was properly noted for the Friday before the close of discovery. Dkt. # 124. Mr. Blatt did not properly note his motion, but if he had, it would have been noted for August 15, the Friday *after* the close of discovery.

Putting aside that Mr. Blatt's motion was untimely, his eleventh-hour request to depose the Defendants is reflective of the last-minute (or after-the-last-minute) approach he has used throughout this case. Mr. Blatt has delayed this proceeding repeatedly, as the court has noted in many prior orders. The court will not reward his lack of diligence by further delaying the resolution of this case.

Defendants' counsel takes no position on Mr. Blatt's request to modify the discovery deadline. Counsel does so, it appears, because he may intend to request that the court continue the December 8 trial date. The court will not prejudge that request. It observes, however, that counsel has identified conflicts with trial dates that he could have resolved months ago, and that the other trial dates are in cases in which counsel represents defendants who have at least three (and as many as six) other lawyers to defend them. If counsel intends to request a continuance of the long-delayed trial in this case, he will have to provide a much stronger basis for that request.

## III.  CONCLUSION

For the reasons previously stated, the court GRANTS Defendants' summary judgment motion in part and DENIES it in part. Dkt. # 125. The court dismisses all

ORDER – 11

claims against all Defendants with two exceptions: Plaintiff may proceed to trial on his claim that six Marysville Police officers arrested him without probable cause in violation of the Fourth Amendment and his claim that the same officers arrested him in retaliation for his exercise of First Amendment rights.

The court DENIES Plaintiff's motion to extend the discovery period. Dkt. # 132. Discovery in this matter is closed. Trial will begin on December 8, 2014.

The clerk shall TERMINATE Defendants Adam Vermeulen, John Doe Gehlsen, and Fred L. Gillings as parties.

DATED this 18th day of August, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 12