HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEON BLATT,

    Plaintiff,

    v.

PETE SHOVE, et al.,

    Defendants.

CASE NO. C11-1711RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court Plaintiff Leon Blatt's motion for a new trial. For the reasons stated herein, the court DENIES the motion. Dkt. # 185.

## II.  BACKGROUND & ANALYSIS

After hearing evidence for part of Monday, January 5, 2015 and the following day, the jury hearing Mr. Blatt's claims returned a verdict in favor of Defendants on January 7. The jury ruled that Officer Pete Shove and Sergeant Jeffrey Franzen of the Marysville Police Department had probable cause to arrest Mr. Blatt on October 13, 2008, and that Mr. Blatt had therefore failed to prove a claim for violation of his Fourth Amendment or First Amendment rights. The court entered judgment for Defendants on January 8.

Mr. Blatt wants a new trial. He contends that a witness, Amanda Wallawine, lied to the jury. He also contends that counsel for Defendants knew Ms. Wallawine was lying, allowed her to do so, and relied upon her perjured testimony to convince the jury to rule in Defendants' favor.

ORDER – 1

All of these assertions are meritless.[1]  Ms. Wallawine, who was one of the occupants of a house awoken after midnight by Mr. Blatt's knocking on the door, testified on direct examination that she heard the word "police" being "hollered" through the front door.  Jan. 6 Tr. (Dkt. # 183) at 4.  She went to the door, and testified that she thought she would open it to find "[a] policeman, because they yelled 'police.'"  *Id.* at 5.  What she discovered instead was Mr. Blatt, who she testified "told [her] that he needed [her] to call the police because someone was trying to kill him with a knife."  *Id.* at 6.  Ms. Wallawine then called the police.

When Mr. Blatt's counsel cross-examined Ms. Wallawine, she repeated the same facts.  In response to the question "When you called the 911 operator, what exactly did you say?"  Ms. Wallawine answered as follows:

> I told them that there was a man on my front porch that indicated that he was the police, but when I opened the door, he was not an officer, and that he was telling me that someone was trying to stab him with a knife, that he was being attacked.

Jan. 6 Tr. (Dkt. # 183) at 10-11.  This exchanged followed:

> Q: Let me see if I can get this clear.  I want to be very clear about this.  He said that he was the police; is that your testimony.
>
> A: Yes.  He said he was the police when he was pounding on the door.  He yelled "police."
>
> Q: I want to be clear about this.  Did he say he was the police?
>
> A: He yelled "police."

Jan. 6 Tr. (Dkt. # 183) at 11.

---

[1] Mr. Blatt's motion would not succeed on any standard of review.  For the sake of completeness, the court notes that Rule 59 of the Federal Rules of Civil Procedure permits the court to grant a new trial for any reason for which new trials have traditionally been granted.  Among those reasons is a conclusion that the verdict is "based upon false or perjurious evidence . . . ." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).  A court considering a Rule 59 motion must weigh evidence and assess credibility, it is not required to accept the view of the trial that the moving party prefers.  *See Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  Where the moving party claims that the verdict was "obtained through fraud, misrepresentation, or other misconduct," it must prove as much by "clear and convincing evidence."  *Wharf v. Burlington N. R.R.*, 60 F.3d 631, 637 (9th Cir. 1995) (citation omitted).  The decision to grant a new trial is committed to the trial court's discretion.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 728 (9th Cir. 2007).

ORDER – 2

1    Mr. Blatt contends that Ms. Wallawine lied at trial, and that a transcript of the 911
2 call Ms. Wallawine made that night proves as much. The court notes that the only
3 "transcript" before the court is one that Mr. Blatt prepared himself. But, for the sake of
4 argument, the court cites the transcript as he provided it. That transcript indicates that
5 Ms. Wallawine told the 911 dispatcher that "[T]here's some man on our front porch
6 hollering that he needs the police." Later, after describing the man on her porch and
7 providing other information, she told the dispatcher that "he beat on our door, and woke
8 everybody up, and yelled that he needed the police and so we all came downstairs."
9 According to Mr. Blatt, this is the "perjury" that warrants a new trial. Ms. Wallawine
10 told the 911 dispatcher that Mr. Blatt had only yelled that he *needed the police*, whereas
11 she testified at trial that she believed, before she opened the front door, that Mr. Blatt was
12 yelling that he *was the police*.

13    What Mr. Blatt identifies is not perjury; it is at best an inconsistency. Ms.
14 Wallawine was awoken in the middle of the night to someone yelling "police." It is
15 possible that she believed initially that it was someone claiming to be the police. She
16 undisputedly discovered that the person on her front porch was not the police when she
17 opened her door. At that time, she called 911. The court has no difficulty believing that
18 Ms. Wallawine, who by that time had discovered the "truth" about the man on her porch,
19 relayed that truth to the 911 dispatcher, rather than thinking to inform the dispatcher of
20 the less relevant fact that she had initially believed the man to be claiming to be the
21 police. There is little reason to believe that Ms. Wallawine's statements to the 911
22 dispatcher (made in the midst of a stressful situation) were more complete than her
23 testimony at trial years later, where she had the benefit of being asked the same questions
24 repeatedly. Moreover, when Mr. Blatt's counsel pressed her to repeat her testimony that
25 Mr. Blatt had clearly yelled that he was the police, she merely reiterated that he had said
26 "police." In the court's view, Ms. Wallawine informed the jury that she believed that Mr.
27 Blatt was representing himself to be the police, but implicitly admitted that she could
28 ORDER – 3

have mistakenly drawn that conclusion after hearing only the word "police."  In any event, the court has no basis to conclude that Ms. Wallawine believed that it mattered whether Mr. Blatt had said he was the police or whether he merely yelled that he needed the police.  What was important to her was that a man was pounding on her door in the middle of the night and behaving in a manner that frightened her.

More notable than Mr. Blatt's unsupported allegations of perjury is his failure to confront that perjury at trial.  Mr. Blatt's own evidence shows that he has had audio recordings of all 911 calls relevant to his case since at least November 2009.  Although Mr. Blatt was prohibited from introducing documentary evidence at trial because he wholly failed to comply with his obligation to disclose evidence in advance, nothing prohibited Mr. Blatt from introducing the 911 call (either as an audio recording or as a transcript) to impeach Ms. Wallawine.  He did not.  Instead, he relied solely on the cross-examination that the court has already recounted.  Even if he could excuse his failure to confront Ms. Wallawine about her "perjury" while she was on the stand, he could have brought it to the court's attention before the jury's verdict.  Instead, he waited until after the verdict.

But even if the court were to ignore that there was no perjury, and even if the court were to ignore that Mr. Blatt declined to point out the "perjury" when the jury could have considered it, the court could not ignore that there is no reason to believe that the "perjury" made any difference at trial.  The issue at trial was whether the officers who arrived on the scene after Ms. Wallawine's call (as well as calls from others in the neighborhood) had probable cause to arrest Mr. Blatt for disorderly conduct.  Those officers did not speak to Ms. Wallawine, a fact that Mr. Blatt harped on at trial.  Moreover, those officers did not hear Ms. Wallawine's 911 call.  Instead, they received information from the 911 dispatcher.  No one introduced the "CAD report" that reproduces that information into evidence, although it was used at trial.  No one has obtained a transcript of the portions of the trial relying on the CAD report.  But, one of

ORDER – 4

two things occurred. Either the 911 dispatcher said that Mr. Blatt was impersonating the police, in which case the 911 dispatcher (in Mr. Blatt's version of the facts) was misstating the content of Ms. Wallawine's call. Alternatively, the 911 dispatcher said nothing about Mr. Blatt impersonating the police, in which case the officers' decision to arrest Mr. Blatt was not based, even in part, on that belief. In other words, no matter what Ms. Wallawine told the 911 dispatcher about whether Mr. Blatt was purporting to be the police, what she said had no impact on questions the jury had to answer to determine liability.

Mr. Blatt also lobs accusations at defense counsel. None of them are persuasive. In Mr. Blatt's view, defense counsel knew of the supposed inconsistency between the transcript of Ms. Wallawine's 911 call and what she would say at trial, allowed her to offer "perjured" testimony, and then used that "perjury" to his advantage in closing argument. Already, Mr. Blatt has traveled far from any inference the evidence supports. Putting that aside, defense counsel's closing argument did not depend on Ms. Wallawine's testimony, it depended on what the police knew from the 911 dispatcher. At closing, counsel noted that Officer Shove "knew *from the dispatch* that [Mr. Blatt] was yelling 'police' or 'police, open up." Jan. 6 Tr. (Dkt. # 183) at 26 (emphasis added). It is true that he mentioned Ms. Wallawine as one of many witnesses who contradicted Mr. Blatt's version of the facts. *Id.* at 20-21 (identifying "Amanda Wallawine, Jeffrey Franzen, Adam Vermeulen, and Pete Shove"). He then stated that Ms. Wallawine "utterly gutted his story of what happened on the doorstep on that night . . . ." *Id.* at 21. Mr. Blatt paints this as an attempt to leverage Ms. Wallawine's "perjury," but he is mistaken. Ms. Wallawine indeed contradicted much of Mr. Blatt's testimony. He testified that lights were on inside the home and that it appeared as if there were people awake inside. She testified that the house was dark except for exterior lights and that all occupants were asleep. He testified that he behaved calmly, she testified that he was behaving bizarrely. Mr. Blatt testified that he talked on his cell phone after Ms.

ORDER – 5

Wallawine closed the door.  She testified that she saw no cell phone.  Mr. Blatt testified that Ms. Wallawine and her mother were conversing politely with him; she testified to the contrary.  Defense counsel was free to characterize Ms. Wallawine's testimony as a "gutting" of Mr. Blatt's; there is no reason to believe that the jury thought Ms. Wallawine's testimony about whether she initially believed that Mr. Blatt was purporting to be a police officer was a significant aspect of that "gutting."

The court summarizes its conclusions as follows:  Ms. Wallawine did not lie on the stand.  Even if she had, Mr. Blatt and his counsel sat silently when they could have challenged the "lie" before the jury or to the court in advance of the jury's verdict.  Even if her testimony were somehow inconsistent, there is no reason to believe that inconsistency had any impact on the jury's verdict.  There is no evidence that defense counsel knew about the "lie" or inconsistency.  Even if he knew, the court concludes that he gained no advantage from it.  There is no reason for a new trial.

### III.  CONCLUSION

For the reasons stated above, the court DENIES Mr. Blatt's motion for a new trial. Dkt. # 185.

DATED this 10th day of June, 2015.

_____
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 6